# EXHIBIT A

SHARTSIS FRIESE LLP
JOEL ZELDIN (Bar #51874)
FRANK A. CIALONE (Bar #172816)
SANJEET S. GANJAM (Bar #285615)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111-3598
Telephone:    (415) 421-6500
Facsimile:     (415) 421-2922

Attorneys for Plaintiff LTC (BVI) LIMITED

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**05/04/2022**
**Clerk of the Court**
BY: KAREN VALDES
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| LTC (BVI) LIMITED, a British Virgin Islands limited company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BRAUNHAGEY & BORDEN LLP, a limited liability partnership, and DOES 1 through 20,<br><br>　　　　　　　Defendants. | Case No. **CGC-22-599497**<br><br>**COMPLAINT FOR MONEY DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Case No.                                    COMPLAINT FOR MONEY DAMAGES

Plaintiff LTC (BVI) LIMITED ("LTC") hereby complains against Defendants BraunHagey & Borden LLP ("BraunHagey") and DOES 1 through 20 for negligence and prays for relief as follows.

I. **NATURE OF THE ACTION**

1. LTC is an investor and investment manager. In 2021, LTC sought to make a sizeable equity investment in Outdoorsy, Inc. ("Outdoorsy"), a technology startup based in California. After LTC and Outdoorsy reached an agreement as to the basic terms of LTC's equity investment in Outdoorsy, Outdoorsy referred LTC to Outdoorsy's outside counsel, BraunHagey, a California-based law firm, to execute the transaction documents and close the purchase.

2. During the closing, BraunHagey failed to exercise reasonable care to safeguard its confidential communications with LTC. BraunHagey personnel failed to use a secure data room for the exchange of documents and information and instead utilized emails, including an email account of a paralegal that was severely compromised. LTC is informed and believes that unknown perpetrators took advantage of BraunHagey's compromised email systems to "spoof," *i.e.*, mimic, the email accounts of BraunHagey's attorneys and staff. From there, the perpetrators launched a "man in the middle attack" on LTC: they intercepted deal communications between LTC and BraunHagey, impersonated BraunHagey attorneys and staff in emails and a telephone call and provided LTC with fraudulent wire instructions for the closing. LTC reasonably believed that the perpetrators' communications were genuine and wired approximately $2.8 million dollars to the bank account they provided in fraudulent wire instructions. Outdoorsy never received those funds.

3. Not only did BraunHagey fail to secure its email systems, but it also failed to identify the fraudulent wire transfer for weeks—by which time the perpetrators had absconded with approximately $2.8 million dollars of LTC's funds and it was too late for the banks and law enforcement to cancel the transaction.

4. Since learning of the wire fraud, LTC has taken reasonable steps to try to recover the stolen funds, including hiring lawyers to trace and recover the stolen funds and reporting the incident to law enforcement in Hong Kong, the apparent location of the perpetrators' bank account. So far, however, LTC has not recovered any portion of the funds. As a result, LTC has been

damaged in the amount of at least $2.8 million dollars, plus expenses it incurred to try to recover the stolen funds, according to proof.  This attack would not have happened or been possible but for BraunHagey's failure to exercise reasonable care, including but not limited to safeguarding its email systems by utilizing common-place fraud prevention procedures, implementing basic checks to detect wire fraud, identifying a cyber attack on its email systems, promptly notifying all interested parties of a cyber attack on its email systems, and using a secure electronic data room in lieu of email to transmit confidential communications.

**II.    THE PARTIES**

5.    Plaintiff LTC is a limited company registered in the British Virgin Islands with its registered office located at Orbis Services Limited, Tropic Isle Building, P.O. Box 3423, Road Town, Tortola, British Virgin Islands.

6.    Defendant BraunHagey is a California limited liability partnership with its principal place of business located at 351 California Street, 10th Floor, San Francisco, CA 94104.

7.    BraunHagey claims to be a sophisticated law firm with offices in San Francisco and New York City.  Its website states that it is staffed with seasoned attorneys based in California and New York who graduated from top law schools and clerked for respected federal and state judges.  Its website also states that its corporate group specializes in equity and debt financings, mergers and acquisitions, and corporate governance, and that it has helped clients raise over $3 billion since 2018.

8.    The true names and capacities of the defendants named herein as Does 1 through 20 are unknown to Plaintiff, who therefore sues them under these fictitious names.  Plaintiff will amend this complaint to add their true names and capacities when they become known.

**III.    JURISDICTION AND VENUE**

9.    This Court has jurisdiction over the claims herein and is the proper venue because defendant's principal place of business is in San Francisco County, California and the alleged wrongful acts by Defendants took place in San Francisco County, California.

10.    This is an unlimited civil action because Plaintiff has suffered damages and equitable losses in excess of $25,000.

## IV. FACTUAL BACKGROUND

### A. LTC Planned To Make A Substantial Investment In Outdoorsy.

11. Beginning on or about April 2021, LTC and Outdoorsy began discussing an additional equity investment by LTC in Outdoorsy. LTC was already an investor in Outdoorsy and was seeking to increase its ownership in the company.

12. On April 5, 2021, Outdoorsy's CEO, Jeff Cavins ("Cavins"), introduced LTC to Dan Harris ("Harris"), a Partner at BraunHagey and the head of its corporate transactions practice. Cavins advised Harris that LTC planned to invest between $2 and $2.5 million in Outdoorsy. Cavins advised LTC that Harris was Outdoorsy's outside counsel and would prepare the deal documents.

13. On April 22, 2021, Outdoorsy instructed BraunHagey to setup a secure electronic data room for providing documents to LTC.

14. By April 27, 2021, LTC and Outdoorsy had agreed that LTC would invest an additional $2.8 million in Outdoorsy (the "LTC/Outdoorsy Transaction"). Outdoorsy instructed Harris to prepare the required deal documents.

15. The communications between LTC and Outdoorsy occurred almost exclusively by email, as with all communications between LTC and BraunHagey for the remainder of the LTC/Outdoorsy Transaction.

### B. BraunHagey Uses Email To Transmit Confidential Deal Documents.

16. On or about April 22, 2021, BraunHagey set up a secure electronic data room to exchange deal documents and other confidential information (the "Data Room"). LTC is informed and believes that BraunHagey's policy was to use a secure electronic data room for exchanging deal documents and other confidential information. Email is inherently not a secure channel for the transmission of information and is susceptible to interception during transmission, "phishing," "spoofing" and various other types of cyber fraud. BraunHagey's attorneys and staff, however, failed to utilize the Data Room for the LTC/Outdoorsy Transaction.

17. On April 29, 2021, LTC asked Outdoorsy and BraunHagey for draft deal documents, noting that BraunHagey had not uploaded any documents to the Data Room. Outdoorsy responded

- 3 -

that BraunHagey would provide them. On May 4, 2021, LTC followed up again.

18. On May 5, 2021, Isabel da Roza ("da Roza"), a BraunHagey attorney, sent LTC various deal documents, including a draft stock purchase agreement and a summary of the deal terms, *via email*. Da Roza did not use the Data Room although LTC was setup to receive documents through the Data Room.

19. In her May 5, 2021 email, da Roza informed LTC that they were targeting a closing date during the week of May 10. Da Rosa also asked LTC for the legal names of the investing business entities, the allocations of shares that those entities would receive, and the applicable signature blocks. Da Roza further advised that she would send a signature packet for execution that BraunHagey would "hold in escrow until closing."

20. In that email, da Roza copied Outdoorsy representatives, Harris and another individual from BraunHagey, Nikka Umil ("Umil"). Da Roza did not identify Umil's position, and Umil did not do so in any later communications. LTC is informed based on information obtained after the wire fraud and believes that Umil was then a paralegal at BraunHagey. (LTC does not know if Umil still works for BraunHagey.)

21. On May 7, 2021, da Roza followed up by email that Outdoorsy was targeting a closing date of May 13, 2021 and that she would send a signature packet by May 10, 2021. Again, da Roza copied Umil on her email.

22. On or about May 11, 2021, Umil emailed LTC the signature packet and asked for the email addresses of the LTC signatories.

23. Later that day, Harris "replied-all" to Umil's email and *attached the confidential deal documents and wire instructions to his email*. He confirmed that closing would occur on May 13, 2021. Like da Roza, neither Harris nor Umil used the Data Room for any of their communications.

24. LTC's representative based in London followed up on May 12, 2021 at 3:14 a.m. PST to ask whether it was supposed to transmit the wire on May 13, 2021. Da Roza responded at 9:35 a.m. PST that they hoped LTC would execute all documents and transmit the funds by May 13, 2021.

- 4 -

| Case No. | COMPLAINT FOR MONEY DAMAGES |

### C. BraunHagey's Email Systems Are Compromised.

25. On or about May 12, 2021 at 3:15 p.m. PST, LTC received what it believed at the time was an email from Harris. In that email, Harris appeared to be replying to the email chain among LTC, Outdoorsy and BraunHagey from earlier that day and confirmed again that the closing would take place on May 13, 2021. Harris again attached the draft deal documents he emailed two days before and attached revised wire instructions. Harris explained that Outdoorsy's CEO had informed him that Outdoorsy's "designated bank account is currently going through some internal audit, and during this time, inflows to the account are rejected." Accordingly, Harris added, LTC should transmit its funds to the Standard Chartered bank account identified in the revised wire instructions.

26. Unbeknownst to LTC, the real Harris did not send this email. LTC is informed and believes that the email was instead sent by someone who had "spoofed" Harris's BraunHagey email account (the "Imposter Harris"). Email spoofing is a form of cyberattack in which a hacker sends an email from an email address designed to look almost identical to the email address of a trusted sender in order to manipulate recipients into believing the email is coming from that trusted sender. Here, the hacker created email addresses for Outdoorsy and BraunHagey employees and attorneys using domain names that differed from the legitimate email accounts by just one letter (*e.g.*, "@braunhageys.com" instead of "@braunhagey.com"). The email, however, did copy Umil at her correct email address, umil@braunhagey.com.

27. The LTC representatives receiving the email did not suspect that the Imposter Harris's 3:15 p.m. email was a spoof. None of the differences in email addresses were apparent to any LTC recipients receiving the email. Most email clients do not display the email address of the sender and instead only show the name of the sender. Even if the email client is configured to show the full email address of the sender, the recipients had no reason to scrutinize the email headers as the email appeared genuine in other respects. Most importantly, it was continuing an existing, genuine email thread from earlier that day, which only the original recipients of that email thread were expected to possess. It also attached documents that only BraunHagey should have possessed, *i.e.*, the draft deal documents. And, the Imposter Harris's writing and verbiage all read like Harris's

prior emails.

28. Shortly after, Umil responded to the 3:15 p.m. email from the Imposter Harris, again asking LTC for email addresses for the signatories. Unlike the email from the Imposter Harris, Umil's email originated from her genuine BraunHagey email address: umil@braunhagey.com. There is no indicia on the face of this email that it was spoofed.

29. LTC is informed and believes that the perpetrators of this fraud had somehow commandeered Umil's genuine BraunHagey email account, all of her emails and all of the deal documents attached to her emails. LTC does not know the timing of when this might have occurred, but it is likely that the perpetrators must have had access to Umil's email for some time before they executed their fraud to steal LTC's payment to Outdoorsy. The Imposter Harris could not have replied to an ongoing, genuine email thread among LTC, Outdoorsy and BraunHagey or reattached the various deal documents without possessing a copy of the original, genuine thread.

30. LTC does not know if the perpetrators of the fraud blocked Umil from accessing her emails at the time or soon after the Imposter Harris sent the 3:15 p.m. email on May 12, 2021. If she continued to have access, she should have seen the revised wire instructions and attempts to steal LTC's payment and alerted someone. But, if she did not have access to her own emails, she should have recognized that as a problem and alerted someone.

31. If Umil did indeed lose access to her account, neither Umil nor anyone at BraunHagey informed LTC that her account had been compromised.

**D.     LTC's Payment Is Stolen.**

32. LTC had no reason to doubt the explanation for the revised wiring instructions provided by the Imposter Harris or to suspect that the email had not been sent by Harris. The revised wire instructions identified an account held at Standard Chartered, which is a multinational banking and financial services company headquartered in London, United Kingdom and commonly utilized in international trade and finance. LTC proceeded with its preparations to wire the payment the next day per the revised wiring instructions.

33. The fraud continued the next day. On or about 12:01 a.m. PST on May 13, 2021, LTC received an email from Umil's email account containing the draft disclosure schedule for the

LTC/Outdoorsy Transaction. LTC is informed and believes that the perpetrators, not the real Umil sent this email (the "Imposter Umil"). Da Rosa had previously circulated the same document to LTC and Outdoorsy. The Imposter Umil, however, copied the spoofed email addresses for the other individuals on the email chain, *i.e.*, "@braunhageys.com" and "@outdoorsys.com."

34.     LTC "replied-all" to the Imposter Umil's email, *i.e.*, the most recent email in the thread, to confirm that LTC would sign the documents and wire the funds that day or the next. A few hours later, LTC sent the signed documents to Umil.

35.     After receiving the signed documents, the Imposter Umil re-sent LTC the fraudulent wiring instructions that the Imposter Harris had previously provided. ***This email again originated from Umil's genuine BraunHagey email address***.

36.     LTC's CEO, Konstantin Sidorov, instructed Oxana Koreneva ("Koreneva"), LTC's investment analyst, to call Umil to verify the wiring instructions over the phone. Koreneva emailed Umil at her correct BraunHagey email address and asked Umil for her phone number. The Imposter Umil responded with a phone number with a "415" San Francisco area code.

37.     Koreneva called the number and spoke briefly with a woman who confirmed the revised wiring instructions. LTC is now informed and believes that this woman was not Umil, but in fact someone impersonating Umil. At the time, however, LTC had no reason to believe that she was not Umil.

38.     LTC subsequently wired a total of $2,799,784.32 to the account provided in the revised wiring instructions.

39.     The imposter(s) continued to impersonate members of the BraunHagey deal team after LTC sent the wire, including sending LTC closing documents and signature pages. For example, on May 17, 2021, LTC received a list of the participants in the funding round and other closing deal documents from what it believed at the time was Da Rosa. The email instead was from someone spoofing Da Rosa's email account, *i.e.*, darosa@braunhageys.com, much like the emails from the Imposter Harris. LTC had no reason to believe at the time that these were spoofed emails.

40.     On May 20, 2021, Koreneva "replied-all" to an email from Imposter Harris to ask whether the funds had been received, copying Umil at her BraunHagey email address.

41. On May 21, 2021, the Imposter Harris, again copying Umil's BraunHagey email address, confirmed receipt of the wire.

### E. LTC And Outdoorsy Did Not Discover The Fraud For Nearly Three Weeks.

42. On June 4, 2021, nearly three weeks after LTC wired its funds, LTC received an email from Outdoorsy's CEO stating that it had not received the wire.

43. At no time after May 13, 2021—the date of the scheduled closing—did any member of BraunHagey contact LTC to ask about LTC's payment, signatures for the deal documents, or anything else related to the LTC/Outdoorsy Transaction. The only emails LTC received from any BraunHagey email address during this time were from Umil, whose email account, upon information and belief, had been commandeered by the perpetrators of the fraud. The fact that BraunHagey abruptly stopped communicating with LTC suggests that BraunHagey may have discovered the wire fraud prior to June 4, 2021.

### F. LTC Paid An Additional $2.8 Million To Outdoorsy.

44. LTC was forced to pay approximately $2.8 million a second time to purchase shares from Outdoorsy as Outdoorsy refused to issue shares without payment.

### G. BraunHagey Rejected LTC's Demand For Compensation.

45. LTC demanded in writing that BraunHagey compensate LTC for the fraud, but BraunHagey has refused to do so or acknowledge any mistake or wrongdoing on its part.

### H. BraunHagey Failed To Utilize Common Security Protocols.

46. LTC and its representatives have tried to determine from BraunHagey exactly how BraunHagey's email systems were compromised, but BraunHagey has refused to provide the necessary information. BraunHagey has instead repeatedly argued that it was not responsible and that its security was not to blame, arguing that it utilizes antivirus software and firewalls, and it has written policies, training, and monitoring for malicious emails.

47. But those protocols are insufficient to meet BraunHagey's standard of care. In particular, BraunHagey has not explained how a criminal could have so much access to confidential information and take over one of its employee's email accounts. BraunHagey has also not explained why it was using email to transmit confidential information in lieu of the working Data

- 8 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

Room.

48.     LTC is informed and believes that BraunHagey did not have reasonable data security for a law firm of its sophistication that represents clients that have raised billions of dollars and coordinates individual wire transfers in the millions of dollars.  LTC is informed and believes that BraunHagey failed to implement common email security protocols that may have prevented this type of fraud, including but not limited to:

    a.     Multifactor authentication;[1]

    b.     Requiring email clients to utilize modern authentication protocols, which would have prevented third parties from utilizing BraunHagey's email server to transmit emails;

    c.     Prohibiting email clients from logging in from countries or regions from where BraunHagey's employees would not login; and

    d.     Monitoring logins from suspicious IP addresses or multiple locations and utilizing fraud detection algorithms.

49.     BraunHagey also failed to utilize the Data Room it specifically created for the LTC/Outdoorsy Transaction.  If BraunHagey had utilized the Data Room to transmit wire instructions and other confidential deal terms, it would have prevented the fraud described herein because the perpetrators of the fraud would not have had access to the substance of the deal terms by email.  Nor would LTC have accepted revised wire instructions provided by email that contradicted wire instructions uploaded to the Data Room.

## FIRST CAUSE OF ACTION

### Negligence

50.     LTC reincorporates the allegations in Paragraphs 1 through 49 as if fully restated herein.

51.     BraunHagey was tasked with managing all aspects of the LTC/Outdoorsy Transaction, including but not limited to preparing the deal documents for the stock purchase,

---

[1] A typical multi-factor authentical protocol would require an employee to first input a code she received by text message before logging into the firm's email system.

- 9 -

Case No.                                          COMPLAINT FOR MONEY DAMAGES

obtaining signatures for and holding the deal documents in escrow, coordinating the transfer of funds and issuing shares.

52. BraunHagey knew that LTC was relying on BraunHagey to facilitate the transfer of funds and related documents to Outdoorsy to complete the stock purchase.

53. BraunHagey also knew, or at least should have foreseen, that a security breach of its email systems could result in the theft of investor funds.

54. BraunHagey thus owed a duty of reasonable care to LTC to prevent harm to LTC, including what happened here: the use of BraunHagey's email systems for a "man in the middle attack" to steal LTC's payment to Outdoorsy.

55. BraunHagey's standard of care to clients and non-clients alike is also informed by its obligations as a professional law firm. A law firm must "take reasonable steps to secure their electronic systems to minimize the risk of unauthorized access." Cal. State Bar Formal Opn. No. 2020-203. Indeed, lawyers owe a professional duty of competence and confidentiality that requires lawyers to safeguard confidential information and to "take reasonable efforts to protect such information from unauthorized disclosure or destruction." *Id*. (citing Rules of Professional Conduct 1.1, 1.6 and Bus. & Prof. Code 6068(e)).

56. These "reasonable efforts" include "using secure internet access methods to communicate, access and store client information (such as through secure Wi-Fi, the use of a Virtual Private Network, or another secure internet portal), using unique complex passwords, changed periodically, implementing firewalls and anti-Malware/Anti-Spyware/Antivirus software on all devices upon which client confidential information is transmitted or stored, and applying all necessary security patches and updates to operational and communications software." ABA Formal Opn. No. 477R (May 11, 2017). Law firms should also use other tools, including "encryption of data that is physically stored on a device and multi-factor authentication to access firm systems," to ensure that their electronic communications are secure. *Id*.

57. A law firm also has an "obligation to monitor for a data breach" and, "[w]hen a breach is detected or suspected . . . [to] act reasonably and promptly to stop the breach and mitigate damage resulting from the breach." Cal. State Bar Formal Opn. No. 2020-203.

58. Finally, BraunHagey agreed to serve as an escrow agent for LTC as part of this transaction. An escrow agent has a duty to exercise reasonable care in performing its duties, including to prevent the unauthorized disclosure of documents and information it holds in escrow.

59. BraunHagey breached the duty of care it owed to LTC through its negligent actions and omissions, including the negligent actions and omissions of its partners, employees, representatives and agents for which BraunHagey is vicariously responsible, including but not limited to by:

    a. failing to use a secure data room to transmit documents to LTC;

    b. failing to prevent the unauthorized disclosure of documents and information BraunHagey held in escrow for the LTC/Outdoorsy Transaction;

    c. failing to employ adequate and reasonable data security measures to secure and safeguard the parties' confidential deal information and communications, including the wire instructions; and

    d. failing to promptly detect and notify LTC of the cyber attack on its systems, which prevented LTC from recovering its funds.

A reasonably careful law firm would not have engaged in the acts and omissions alleged herein.

60. As a direct and proximate result of the BraunHagey's negligence, LTC suffered damages according to proof, including but not limited to the approximately $2.8 million stolen from LTC and the costs LTC has incurred and is continuing to incur to try to recover those funds.[2]

WHEREFORE, LTC prays for relief as set forth below.

## PRAYER FOR RELIEF

1. For general, special and compensatory damages according to proof in excess of $25,000;

2. For attorneys' fees and costs;

---

[2] This action involves funds wired by both LTC and LTC Pledge SPC Limited, a segregated portfolio company registered in the Cayman Islands. Pursuant to an Assignment Agreement entered July 21, 2021, LTC Pledge SPC Limited transferred and assigned all of its rights, title, benefit and interest in the wired funds, including any causes of action arising out of and claims to the wired funds, to LTC.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111-3598

3. For pre- and post-judgment interest; and

4. For such other and further relief, in law or in equity, as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

LTC hereby demands a jury trial on all issues so triable.

Dated: May 4, 2022                                            SHARTSIS FRIESE LLP

By: _____/s/ FRANK A. CIALONE_____

Attorneys for Plaintiff LTC (BVI) LIMITED

9175455

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| FRANK A. CIALONE (SBN 172816), SHARTSIS FRIESE LLP<br>One Maritime Plaza, 18th Floor, San Francisco, CA 94111<br>TELEPHONE NO.: (415) 421-6500  FAX NO. (Optional): (415) 421-2922<br>E-MAIL ADDRESS: fcialone@sflaw.com<br>ATTORNEY FOR (Name): Plaintiff, LTC (BVI) LIMITED | **ELECTRONICALLY FILED**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**05/04/2022**<br>Clerk of the Court<br>BY: KAREN VALDES<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 MCALLISTER STREET
MAILING ADDRESS:
CITY AND ZIP CODE: SAN FRANCISCO 94102
BRANCH NAME: CIVIC CENTER COURTHOUSE

CASE NAME:
LTC (BVI) LIMITED v. BRAUNHAGEY & BORDEN LLP, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CGC-22-599497 |
|---|---|---|
| [x] Unlimited  [ ] Limited<br>(Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint (*not specified above*) (42) |
| [ ] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition (*not specified above*) (43) |
| [x] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (*check all that apply*): a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (*specify*): One: Negligence
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: May 4, 2022
FRANK A. CIALONE
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]    **CIVIL CASE COVER SHEET**    Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

| | | CM-010 |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
   Auto (22)–Personal Injury/Property Damage/Wrongful Death
   Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
   Asbestos (04)
      Asbestos Property Damage
      Asbestos Personal Injury/ Wrongful Death
   Product Liability *(not asbestos or toxic/environmental)* (24)
   Medical Malpractice (45)
      Medical Malpractice– Physicians & Surgeons
      Other Professional Health Care Malpractice
   Other PI/PD/WD (23)
      Premises Liability (e.g., slip and fall)
      Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
      Intentional Infliction of Emotional Distress
      Negligent Infliction of Emotional Distress
      Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
   Business Tort/Unfair Business Practice (07)
   Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
   Defamation (e.g., slander, libel) (13)
   Fraud (16)
   Intellectual Property (19)
   Professional Negligence (25)
      Legal Malpractice
      Other Professional Malpractice *(not medical or legal)*
   Other Non-PI/PD/WD Tort (35)

**Employment**
   Wrongful Termination (36)
   Other Employment (15)

**Contract**
   Breach of Contract/Warranty (06)
      Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
      Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
      Negligent Breach of Contract/ Warranty
      Other Breach of Contract/Warranty
   Collections (e.g., money owed, open book accounts) (09)
      Collection Case–Seller Plaintiff
      Other Promissory Note/Collections Case
   Insurance Coverage *(not provisionally complex)* (18)
      Auto Subrogation
      Other Coverage
   Other Contract (37)
      Contractual Fraud
      Other Contract Dispute

**Real Property**
   Eminent Domain/Inverse Condemnation (14)
   Wrongful Eviction (33)
   Other Real Property (e.g., quiet title) (26)
      Writ of Possession of Real Property
      Mortgage Foreclosure
      Quiet Title
      Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
   Commercial (31)
   Residential (32)
   Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
   Asset Forfeiture (05)
   Petition Re: Arbitration Award (11)
   Writ of Mandate (02)
      Writ–Administrative Mandamus
      Writ–Mandamus on Limited Court Case Matter
      Writ–Other Limited Court Case Review
   Other Judicial Review (39)
      Review of Health Officer Order
      Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
   Antitrust/Trade Regulation (03)
   Construction Defect (10)
   Claims Involving Mass Tort (40)
   Securities Litigation (28)
   Environmental/Toxic Tort (30)
   Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
   Enforcement of Judgment (20)
      Abstract of Judgment (Out of County)
      Confession of Judgment *(non- domestic relations)*
      Sister State Judgment
      Administrative Agency Award *(not unpaid taxes)*
      Petition/Certification of Entry of Judgment on Unpaid Taxes
      Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
   RICO (27)
   Other Complaint *(not specified above)* (42)
      Declaratory Relief Only
      Injunctive Relief Only *(non- harassment)*
      Mechanics Lien
      Other Commercial Complaint Case *(non-tort/non-complex)*
      Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
   Partnership and Corporate Governance (21)
   Other Petition *(not specified above)* (43)
      Civil Harassment
      Workplace Violence
      Elder/Dependent Adult Abuse
      Election Contest
      Petition for Name Change
      Petition for Relief From Late Claim
      Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** OCT 05, 2022

**TIME:** 10:30 am

**PLACE:** Department 610
400 McAllister Street
San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

**(SEE LOCAL RULE 4)**

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator
400  McAllister Street, Room 103-A
San Francisco, CA  94102
(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BraunHagey & Borden LLP, a limited liability partnership, and DOES 1 through 20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LTC (BVI) Limited, a British Virgin Islands limited company

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco County Superior Court
400 McAllister Street, San Francisco, CA  94102

**CASE NUMBER:** *(Número del Caso):*
**CGC-22-599497**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Frank A. Cialone, Shartsis Friese LLP, One Maritime Plaza, 18th Floor, San Francisco, CA  94111; (415) 421-6500

DATE: **05/06/2022**
*(Fecha)*

Clerk, by **KAREN VALDES**, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

| | |
|---|---|
| **POS-010** | |
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Frank A Cialone, Esq. \| SBN: Bar No.172816<br>SHARTSIS FRIESE LLP<br>One Martime Plaza 18th Floor   San Francisco, CA 94111 | FOR COURT USE ONLY |
| TELEPHONE NO.: (415) 421-6500 \| FAX NO. (415) 421-2922 \| E-MAIL ADDRESS fcialone@sflaw.com | |
| ATTORNEY FOR *(Name):* Plaintiff: | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**05/18/2022**<br>**Clerk of the Court**<br>**BY: KAREN VALDES**<br>**Deputy Clerk** |
| Superior Court of California, County of San Francisco<br>STREET ADDRESS: 400 McAllister Street Rm 103<br>CITY AND ZIP CODE: San Francisco, CA 94102<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER: LTC (BVI) LIMITED<br>DEFENDANT/RESPONDENT: BRAUNHAGEY & BORDEN LLP, | CASE NUMBER:<br>CGC-22-599497 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>13085.001 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **Notice to Plaintiff; Case Management Statement Form CM-110; Judicial Mediation Program.**
3. a. Party served *(specify name of party as shown on documents served):*
   **BraunHagey & Borden LLP, a limited liability partnership**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Sierra Talavera, Operations Manager - Authorized to Accept**
   Age: 30 yrs \| Weight: 120lbs \| Hair: Brown \| Sex: Female \| Height: 5'3" \| Eyes: Brown \| Race: Hispanic
4. Address where the party was served: **351 California St Fl 10**
   **San Francisco, CA 94104-2411**
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **5/13/2022**   (2) at *(time):* **1:59 PM**
   b. ☐ **by substituted service.** On *(date):* at *(time):* I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
         *(date):* from *(city):*   **or** ☐ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>**POS010-1/SF93153** |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                                                       (2) from *(city):*
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☑ On behalf of **BraunHagey & Borden LLP, a limited liability partnership**
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☑ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7. **Person who served papers**
   a. Name: **Kevin Wharton - Nationwide Legal, LLC REG: 12-234648**
   b. Address: **1625 Clay Street 4th Floor Oakland, CA 94612**
   c. Telephone number: **(510) 444-4690**
   d. **The fee** for service was: **$ .00**
   e. I am:
      (1) ☐ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☑ registered California process server:
         (i) ☐ owner       ☑ employee       ☐ independent contractor.
         (ii) Registration No.: **1439**
         (iii) County: **San Francisco**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **5/13/2022**

**N** Nationwide Legal, LLC
1625 Clay Street 4th Floor
Oakland, CA 94612
(510) 444-4690
www.nationwideasap.com

_____
**Kevin Wharton**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*(signature)*